UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC ULRICH and THOMAS OGNIBENE,

           Plaintiffs,

  -against-

FREDERIC M. MANE, DOUGLAS A. KELLNER
ANTHONY COMO, JEANETTE GADSON,
NERO GRAHAM, JR., JAMES J. SAMPLE,
TERRENCE C. O'CONNOR, JOSEPH SAVINO,
NANCY MOTTOLA-SCHACHER and
MARYANN VENELLA, Commissioners,
constituting the Board of Elections in the City
of New York

    -and-

NEIL W. KELLEHER, Chair, EVELYN J. AQUILA
and HELENA MOSES DONOHUE, Commissioners,
constituting The STATE BOARD OF ELECTIONS,

    -and-

ELIOT SPITZER, Attorney General of the State of
New York

                 Defendants.

    -and-

JAYSON LEFER, DANIEL J. HENNESY, WILL
BROWN and MIREYA GIRALDO

                Intervenor-Defendants.

------------------------------------------------------------X

MEMORANDUM & ORDER

05-CV-3911 (SJ) (LB)

NICHOLAS G. GARAUFIS, District Judge.

    "Ballot access—that is, the process for determining whose name gets listed on the ballot

1

for public office—is critical to democracy. The rules should promote the core political freedoms of the First Amendment: the freedom of citizens to organize around and elect candidates of their choosing, and the freedom of candidates to stand for election to public office. To uphold these essential freedoms, ballot access measures must be designed to maximize voter choice. "*Voting Matters in New York: Participation, Choice, Action, Integrity.*" Office of New York Attorney General Eliot Spitzer, February 12, 2001, at 18. As a matter of fundamental democratic principle and sound public policy, this court strongly agrees.

A decade of litigation in the federal courts has amply demonstrated that New York's ballot access laws, far from maximizing voter choice, historically have placed undue restrictions on ballot access in this state. *Pro se* Plaintiffs Thomas Ognibene ("Ognibene") and Eric Ulrich ("Ulrich") now seek a declaratory judgment that would invalidate yet another component of New York's ballot access regime—the requirement that candidates for citywide office in New York City secure 7,500 valid signatures from enrolled party members in order to appear on the primary ballot for that party—as an unconstitutional infringement of the political participation and association rights guaranteed by the First and Fourteenth Amendments, at least as that law applies to Republican Party candidates. The plaintiffs also seek an order directing the Board of Elections in the City of New York ("City Board of Elections") to place Ognibene's name on the ballot for the primary election scheduled for September 13, 2005.

This case was initiated by the filing of an application for an Order to Show Cause and the instant complaint on August 16, 2005.[1] After an initial court appearance at which all respondents

---

[1] This case was assigned at random to Senior United States District Judge Sterling Johnson, Jr. Because Judge Johnson was on vacation at the time, this case was referred to undersigned in his capacity as "miscellaneous judge."

(except the state Attorney General) and proposed intervenors were represented, I signed the Order to Show Cause, directing the plaintiffs to serve the complaint on the State and City Boards of Elections and the Attorney General by noon on August 17, 2005, directing the defendants and intervenors to respond to the complaint by August 19, 2005, and further directing the plaintiffs to reply to those submissions by August 23, 2005. The defendants and intervenors subsequently moved to dismiss the complaint, and a second hearing was held today, August 25, 2005.

It is evident that the 7,500 signature requirement, as applied to the New York City Republican Party, is not designed to maximize voter choice. It far more likely operates to restrict voter choice by keeping otherwise qualified candidates off of party primary ballots and by discouraging them from entering the race in the first place. However, the United States Supreme Court and United States Court of Appeals for the Second Circuit repeatedly have held that the First and Fourteenth Amendments do not require the states to maximize voter choice, or even to ensure that all viable candidates are able to access primary or general election ballots. On the contrary, the Constitution only requires states to refrain from imposing "severe" burdens on ballot access through the operation of their election laws, unless those "severe" burdens operate narrowly in the service of a vital state interest. Because the Second Circuit squarely has held that petition signature requirements more onerous than those faced by Ognibene are not severe within the meaning of the First Amendment, I am constrained to find that the 7,500 signature requirement imposed by New York law likewise is not a severe burden, and thus one that candidates for citywide office may be forced to bear in order to achieve a place on the ballot. Consequently, plaintiffs' application for declaratory and injunctive relief is denied in all respects, and the defendants' motion to dismiss the plaintiffs' complaint is granted.

## I. Factual Background

The Court accepts the plaintiffs' recitation of the material facts as true for the purpose of this application. They are as follows. Ognibene, who is an attorney, was elected to the New York City Council from the 30th Council District in Queens in 1991. (Compl. Ex. 1.) He was re-elected in 1993 and 1997, and served until 2001, the maximum period allowable under term limits provisions of New York City Charter §§ 1137-38. (Id.) Additionally, Ognibene was elected Minority Leader of the New York City Council in 1994. (Compl. Ex. 1.)

Ognibene launched his current bid for New York City Mayor on January 11, 2005, seeking the nomination of both the Republican and Conservative Parties. (Compl. ¶ 11.) He sought the endorsement of the Republican Party organization in each of the city's five boroughs, (Compl. ¶ 12), and ultimately received the endorsement of the Queens County Republican Party, which has the largest enrollment of the five county organizations.[2] (Compl. ¶ 12 and Ex. 3.) Incumbent Mayor Michael R. Bloomberg ("Mayor Bloomberg") received the endorsement of the other four county organizations. (Compl. ¶ 12.)

Ognibene then sought to challenge Mayor Bloomberg in a primary for the Republican nomination by filing a designating petition, as mandated by New York Election Law ("N.Y. Elec. Law") § 6-118. N.Y. Elec. Law § 6-136(2) requires prospective New York City officeholders seeking a place on a primary ballot to submit a petition signed by the lesser of (a) 7500 persons; or (b) five percent of the total number of enrolled voters of the party within New York City. In

---

[2] It appears that several leaders of the Queens Republican Party dissented from the County leadership's decision to back Ognibene, and instead expressed their support for Mayor Bloomberg's candidacy. (Compl. ¶ 12.) Ognibene thus describes Mayor Bloomberg as having received "the support of four and one half county organizations." (Compl. ¶ 39.)

practice, this 7500-signature safety valve applies only to the Democratic and Republican Parties, which have citywide voter enrollments of 2,639,845 and 477,169, respectively. (Compl. Ex. 3.) Candidates were required to amass these signatures during a 37-day window between June 7, 2005 and July 14, 2005. N.Y. Elec. Law §§ 6-134; 6-158(1).

Ognibene timely filed a petition accompanied by 8,116 signatures with the City Board of Elections on July 14, 2005. (Compl. ¶ 14.) However, defendant-intervenors Jayson Lefer, Daniel J. Hennessy, Will Brown, Jr., and Mireya Giraldo challenged the validity of numerous signatures submitted by Ognibene pursuant to N.Y. Elec. Law § 16-102. (Memorandum of Law filed by Jayson Lefer, Daniel J. Hennessy, Will Brown, Jr., and Mireya Giraldo, hereinafter "Lefer Mem." at 2.) The Richmond County Elections Clerk, upon a review of the objections, found 2,379 of the signatures to be invalid.[3] (Compl. ¶ 17.) On August 2, 2005, the City Board of Elections adopted the Richmond County Clerk's findings, and invalidated Ognibene's petition on the ground that contained only 5,848 valid signatures. (Compl. ¶ 20.) Ognibene's disqualification leaves Mayor Bloomberg as the sole Republican candidate for mayor. (Compl. ¶ 21.) As a result, there will be no Republican primary contest for Mayor this September.[4] (Compl. ¶ 21.) In contrast, six Democratic candidates qualified for the mayoral primary, and six other Democrats will be on the primary ballot for the office of New York City Public Advocate. (Compl. ¶ 21;

---

[3] The Complaint describes this official simply as the Richmond County Clerk. (Compl. ¶ 20.) This Court nonetheless presumes that the official who acted with respect to Ognibene's petition was the Clerk of Elections for Richmond County, rather than the County Clerk.

[4] The Court notes that there also will be no Republican primary for the two other citywide offices—Comptroller and Public Advocate. In fact, no Republican candidate will appear on the November ballot for those positions.

5

http://www.vote.nyc.ny.us/pdf/documents/boe/2005primaryelection/CandidacyList.pdf, last visited Aug. 24, 2005.) Ognibene's name will appear on the ballot for mayor in the November general elections, however, as he qualified through the petitioning process to be the Conservative Party's candidate for mayor. (Pl. Reply at 6.)

Ognibene concedes that his petition for Republican candidacy did not contain 7,500 valid signatures, and therefore does not challenge the review process overseen by the City Board of Elections in these proceedings.[5] (Compl. ¶ 18.) Nor does he challenge the City Board of Elections' ruling that fellow GOP hopeful Steven J. Shaw may not delegate the 1,009 signatures that he collected to Ognibene's column because Shaw had not properly designated a Committee to Fill Vacancies on his petition. Accordingly, Ognibene's challenge is limited to the allegation that New York's petition signature requirement, as applied to Republicans running for citywide office in New York City, erects an unconstitutional impediment to candidates running without the backing of the city's Republican Party establishment by abridging the First and Fourteenth Amendment rights of Ognibene and voters such as plaintiff Ulrich, who are denied the option of voting for him.[6]

---

[5] Ognibene advised the Court at the August 16, 2005 hearing that he did not file a proceeding in state court to "validate" his petition following the City Board of Elections' finding that Ognibene had not qualified for the primary because he realized that such a step would be futile.

[6] The intervenors' assertion that Ognibene may not commence the instant action in federal court because state court remedies are available to validate his petition misstates the nature of the plaintiff's claim. (Lefer Mem. at 4-5.) Ognibene contests the constitutionality of New York state election law, not the sufficiency of his petition under existing state law. As the Plaintiff raises federal constitutional claims, his challenge is properly before this court.

## II.     Preliminary Injunction Standard

In order to prevail on this motion for injunctive relief against the City Board of Elections, the plaintiffs must demonstrate a substantial likelihood of success on the merits. Ordinarily, relief in the form of a preliminary injunction may be granted only where the party seeking the injunction establishes that (1) absent injunctive relief, he or she will suffer irreparable injury and (2) either (a) a likelihood of success on the merits, or (b) that there are sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, and a balance of hardships tips decidedly in his or her favor. Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000); Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999).

However, where, as here, "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction will be granted only if the moving party meets the more rigorous likelihood-of-success standard." No Spray Coal., Inc. v. City of N.Y., 252 F.3d 148, 150 (2d Cir. 2001) (per curiam ) (internal quotation marks omitted); Rockefeller v. Powers, 74 F.3d 1367, 1376-77 (2d Cir.1995) (applying the more rigorous standard of preliminary relief in the context of candidate ballot access in a primary election). This requirement is further heightened where a party seeks a preliminary injunction against the government that "will alter rather than maintain the status quo." No Spray Coal., 252 F.3d at 150 (internal quotation marks omitted). In such cases, "the movant must show . . . [a] substantial likelihood of success." Id.

Here, plaintiffs seek injunctive relief that would affect the City Board of Elections' regulation of the 2005 primary election by changing the status quo in favor of Ognibene and his supporters. To prevail in this litigation, the plaintiffs therefore must demonstrate a substantial

likelihood of success on the merits.

## III. Discussion

### A. The State's Motion to Dismiss the Attorney General and State Board of Elections

As an initial matter, the Attorney General must be dismissed as a party to this suit. The plaintiffs' complaint states that the Attorney General is "sued herein solely because this action challenges the constitutionality of provisions of the New York State Election Law." (Compl. ¶ 8.) However, the Attorney General has no connection with the enforcement of Section 6-136(2)(a), and therefore cannot be a party to this suit. Ex Parte Young, 209 U.S. 123, 157 (1908). While the Attorney General is charged with defending the constitutionality of state law, this fact alone does not provide a basis for bringing an action against him. This is because, although the Attorney General has a duty to support the constitutionality of challenged state statutes, N.Y. Exec. Law § 71, and to defend actions in which the state is 'interested', N.Y. Exec. Law § 63(1), the Attorney General does so not as an adverse party, but to represent the State's interest in asserting the validity of its statutes. Mendez v. Heller, 530 F.2d 457, 460 (2d Cir. 1976).

The plaintiffs' complaint also improperly names the individual members of the State Board of Elections. The complaint does not allege any conduct by the State Board of Elections defendants, much less any conduct that caused the plaintiffs' injury. Absent any allegations that the individual members of the State Board of Elections were "directly and personally responsible for the purported unlawful conduct," the Plaintiffs fail to assert a claim against these parties. Rose R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987)).

B.  The Plaintiffs' Constitutional Claims

The plaintiffs' application for declaratory and injunctive relief also must be dismissed because, under the prevailing law of this Circuit, the requirement that Republican candidates for public office in New York City obtain signatures from less than 2% of the party's enrolled voters in order to appear on a primary ballot does not present an unconstitutional impediment to the exercise of the political rights guaranteed by the First and Fourteenth Amendments.

Courts considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick v. Takushi, 504 U.S. 428, 435 (1992) (internal citations and quotation marks omitted). Where state laws subject fundamental rights like the right to vote to "severe restrictions," the reviewing court must apply strict scrutiny, and thus consider whether the state regulatory scheme is narrowly tailored to serve a compelling state interest. Lerman v. Bd. of Elections, 232 F.3d 135, 145 (2d Cir. 2000); Prestia v. O'Connor, 178 F.3d 86, 87 (2d Cir. 1999). However, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." Burdick, 504 U.S. at 435 (quoting Anderson v. Celebrezze, 460 U.S. 780, 788 (1983)). Accordingly, for plaintiffs challenging the constitutionality of a state election law on First Amendment grounds, the contest is most often won or lost on the question of whether the burden imposed by the state law is "reasonable" or "severe."

Here, the plaintiffs assert that the 7,500 signature requirement established by N.Y. Elec. Law § 6-136(2) imposes a severe burden on the political association rights of Republican candidates because: (a) it requires both Republican and Democratic candidates to collect the same number of signatures to qualify for the ballot even though Democrats outnumber Republicans in New York City by more than 5-to-1; (b) the "pragmatic realities of urban living in the 21st century" make it increasingly difficult to reach voters during the brief petitioning period; and (c) "the actual enrollment population is . . . inflated by the workings of Federal Law," which, according to plaintiffs, prevents local boards of election from regularly purging outdated information from the election rolls. (Compl. ¶¶ 34-37.)

The plaintiffs' arguments are unavailing. First, the Second Circuit squarely has held that "a ballot access requirement of signatures from five percent of the relevant voter group ordinarily does not violate constitutional rights." Prestia, 178 F.3d at 87 (citing Jenness v. Fortson, 403 U.S. 431, 442 (1971); Hewes v. Abrams, 718 F. Supp. 163, 167 (S.D.N.Y. 1989); Libertarian Party of Ill. v. Rednour, 108 F.3d 768, 775 (7th Cir. 1997); Rainbow Coal. of Okla. v. Okla. State Elec. Bd., 844 F.2d 740, 743 (10th Cir. 1988)). In contrast, the 7,500 signatures that Ognibene was required to obtain in order to be eligible for the September primary represent approximately 1.57% of New York City's enrolled Republican voters, a figure far short of the 5 percent benchmark approved in Prestia. Moreover, even the 12,000 signatures that the plaintiffs posit as reflecting the true number of signatures that a prospective candidate needs to obtain in order to survive a post-petition legal challenge represent only 2.5% of the city's registered Republicans.

Additionally, the plaintiffs have failed to demonstrate the facts facing petition gatherers on the ground in New York City are extraordinary, and thus render the general rule of Prestia

inoperative in this case. The plaintiffs' assertions that many adult voters work during the day, that seniors and children are reportedly reluctant to open the door for an unknown person, and that many people just do not want to be bothered by people soliciting petition signatures simply do not adequately distinguish New York City from other communities to make the Second Circuit's presumption that five percent signature requirements are constitutionally valid inapplicable in this city. (See Compl. ¶ 37.) I also find unpersuasive the plaintiffs' vague, unsupported, and conclusory allegation that certain provisions of the Voting Rights Act operate to inflate the actual number of registered voters in New York City. (See Compl. ¶ 36.) Even if true, the voter roll would have to overstate the actual number of New York City Republicans by over 200,000 persons in order for the 7,500 signature requirement to exceed the five percent mark. Finally, I find the plaintiffs' suggestion that Ognibene's situation is somehow analogous to that of the plaintiffs in <u>Brown v. Board of Education</u>, 347 US 483 (1954) to be misguided and unfortunate. (Pl. Reply at 9.) This court has not been presented with evidence of any kind that would even begin to suggest that Ognibene has been victimized by invidious discrimination of any kind, that N.Y. Elec. Law § 6-136 generally operates to the disadvantage of any class protected by any state or federal anti-discrimination law, or that the ballot access restrictions are only applied to certain classes of candidates.

Accordingly, under <u>Prestia</u>, the plaintiffs cannot demonstrate a substantial likelihood of success on the merits, and their application for injunctive relief must be dismissed, along with the complaint.

**IV.    Conclusion**

Because the prevailing precedent of this Circuit holds that a signature requirement of five

11

percent or less does not severely burden the political participation rights guaranteed by the First and Fourteenth Amendments, the plaintiffs' motion for injunctive relief is denied and the complaint is hereby dismissed.

However, the demonstrated paucity of Republican primary challenges in New York City races clearly suggests the hardship that the 7,500 signature requirement creates for candidates who are not backed by the party establishment. It further suggests that even a requirement well below the five percent threshold approved in Prestia may unduly stifle democratic politics when applied to a major party whose members nonetheless find themselves vastly outnumbered in a particular locale. As the United States Supreme Court has admonished, the Constitutional principles governing state election laws usually are not susceptible of reduction to a simple litmus test. Storer v. Brown, 415 U.S. 724, 730 (1974). Rather, in the First Amendment context, "the inevitable question for judgment" is this: "in the context of [local] politics, could a reasonably diligent independent candidate be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?" Id. at 742. See also Rockefeller v. Powers, 917 F. Supp. 155, 165 (E.D.N.Y. 1996), aff'd, 78 F.3d 44 (2d Cir. 1996).

The dearth of unaffiliated Republican candidates in this year's citywide election contests casts serious doubt on the Attorney General's present contention that "claims of difficulty of access to the ballot are now part of history." (State Defendants' Memorandum of Law at 10.) On the contrary, as the Attorney General has recognized in other contexts, "[w]hile recent reforms have mitigated the strict requirements of New York's ballot access rules, they did not eliminate them. Indeed, the remaining numerical requirements, technical rules, and the

administrative and legal proceedings associated with ballot access in New York continue to have a palpable adverse impact upon candidates and their supporters." *Voting Matters in New York: Participation, Choice, Action, Integrity,* at 21. Such public policy concerns are ordinarily and properly the responsibility of the political branches of government—that is, unless and until they abridge rights guaranteed by the United States Constitution. Since, for the reasons set forth above, the ballot access limitations created by N.Y. Elec. Law § 6-136(2) do not severely burden the rights of New York City Republican voters under the prevailing law of this Circuit, this court is obligated, in applying the principles of law pronounced by the Court of Appeals to the present facts, to dismiss this case and leave the political branches of New York State government to consider the crucial public policy issues illuminated by this case.

SO ORDERED.


Dated: August 25, 2005                           /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                           Nicholas G. Garaufis
                                                       United States District Judge